UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDVIN ORLANDO MARTINEZ LOPEZ,<br><br>　　　　　　　　　　　Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center, San Diego, California; PATRICK DIVVER, Field Office Director, San Diego Office of Detention and Removal, U.S. Immigrations and Customs Enforcement; U.S. Department of Homeland Security; TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; SIRCE OWEN, Acting Director for Executive Office for Immigration Review; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAM BONDI, Attorney General of the United States;<br><br>　　　　　　　　　　　Respondents. | Case No.: 25-cv-2717-JES-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING COUNT ONE OF THE PETITION FOR HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; AND**<br><br>**(2) DENYING AS MOOT COUNT TWO OF THE PETITION**<br><br>**[ECF NO. 1]** |

//

//

Before the Court is Petitioner Edvin Orlando Martinez Lopez ("Petitioner" or "Martinez Lopez") Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Petitioner contends that he has been illegally detained by the U.S. Department of Homeland Security ("DHS") and Executive Office for Immigration Review ("EOIR"), which have adopted a new interpretation of the Immigration and Nationality Act ("INA"). Petitioner alleges that this interpretation, and its adoption by the Board of Immigration Appeals ("BIA"), compelled an Immigration Judge ("IJ") to deny his custody reconsideration request, who otherwise would have granted Petitioner's release, pursuant to a $1,500.00 bond. Based on this theory, Martinez Lopez alleges that Respondents' conduct violates (1) the INA; and (2) the Due Process Clause of the Fifth Amendment. *Id*. ¶¶ 41-42, 44, 47. Accordingly, Petitioner seeks habeas relief, specifically requesting, inter alia, that the Court: (1) declare that Petitioner is not lawfully detained under 8 U.S.C. § 1225(b) and that, to the extent Petitioner remains in custody, such detention must proceed under 8 U.S.C. § 1226(a); and (2) issue a Writ of Habeas Corpus directing Petitioner's release on a $1,500 bond, consistent with the Immigration Judge's findings, or, alternatively, order a new bond hearing where the Government must justify his continued detention by clear and convincing evidence. *Id*. at 9. For the reasons set forth below, the Court **GRANTS** the Petition for Writ of Habeas Corpus with respect to Count One and **DENIES AS MOOT** Count Two of the Petition.

## I. BACKGROUND

### A. Factual Background

On or around 2002, Petitioner entered the United States without inspection and has lived here for more than two decades. Pet. ¶ 29. During his time here, Petitioner has built deep and longstanding ties to his community and fathered one U.S.-born minor daughter. *Id*. ¶¶ 30-31; ECF No. 1-3 at 2.

//
//
//

On September 8, 2025, Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") agents intercepted Petitioner's car and placed him under arrest. Pet. ¶ 32. Thereafter, Petitioner was served with a Notice to Appear, and removal proceedings were initiated against him. *Id.* ¶ 33. On September 29, 2025, Immigration Judge Eugene Robinson denied Petitioner's bond request, citing *Matter of Yajure-Hurtado*, as the sole basis for his ineligibility. *Id.* ¶ 37. IJ Robinson's order states: "Denied, because *Matter of Yajure-Hurtado* applies to this case. But for, IJ finds Respondent does not present danger and would set bond at $1,500 in this case." *Id.*; ECF No. 1-2 at 2.

### B. Procedural Background

Petitioner filed this action and paid the required filing fee on October 14, 2025. Pet. Respondents filed the Response on October 21, 2025. ECF No. 6 ("Res."). Petitioner filed his Traverse on October 23, 2025. ECF No. 7 ("Trav."). On October 24, 2025, the Court held a hearing on the Petition and heard oral arguments from the Parties. ECF No. 8.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

Habeas corpus is "perhaps the most important writ known to the constitutional law ... affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## III.  DISCUSSION

### A. Jurisdiction

Notwithstanding the principles set forth above, the threshold question for the Court is whether it has jurisdiction to hear Petitioner's claims as Respondents raise three arguments to support their contention that the Court does not. The Court finds that it has jurisdiction to hear this Petition and addresses Respondents' arguments in turn.

First, Respondents argue that 8 U.S.C. § ("Section") 1252(g) strips this court of "jurisdiction over any claim or cause of action arising from any decision to commence or adjudicate removal proceedings or execute removal orders." Res. at 3-4. However, Petitioner does not seek relief from this Court from a decision to execute a removal order. Here, he is challenging Respondents' position that he should be subject to mandatory custody under Section 1225, which resulted in the IJ's negative bond determination. Pet. ¶ 7. Therefore, this argument has no bearing on this Petition.

Second, Respondents argue that Section 1252(a)(5) and Section 1252(b)(9) "divest district courts of jurisdiction to review both direct and indirect challenges to removal orders, including decisions to detain for purposes of removal or for proceedings." Res. at 5. They contend further that "Petitioner challenges the government's decision and action to detain him, which arises from DHS's decision to commence removal proceedings, and is thus an action taken . . . to remove [him] from the United States." *Id.* (internal quotations omitted).

//

//

1    Section 1252 (b)(9) directs that "[j]udicial review of all questions of law and fact ... arising from any action taken or proceeding brought to remove an alien from the United States ... shall be available only in judicial review of a final order." Section 1252(a)(5) reserves such "judicial review of *an order of removal*" for the courts of appeals (emphasis added). Following a plain language analysis of the implicated statutes, the Court finds that that this provision means that judicial review of final orders of removal—not every order issued in a removal proceeding—is exclusively reserved to the courts of appeals. This finding is in line with a recent Supreme Court decision where it held that an IJ's Convention Against Torture determination was not a final order of removal, and that judicial review of that decision is not governed by § 1252(b)(9). *Nasrallah v. Barr*, 590 U.S. 573, 581–83 (2020); *see also Riley v. Bondi*, 606 U.S. ___, Part IIA2 (2025) (discussing *Nasrallah*). Respondents' decision to apply Section 1225(b)(2) to Petitioner, resulting in his mandatory detention and a negative bond determination, is not a final order of removal. Thus, § 1252(b)(9) nor § 1252(a)(5) bars its review by the Court.

Third, Respondents argue that Petitioner was required to exhaust his administrative remedies prior to seeking relief under Section 2241. Res. at 7 n.2; *see Castro–Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001). They explain that by not appealing the underlying bond denial to the BIA, Petitioner is attempting to bypass the set forth administrative scheme. Res. at 7 n.2. And for these reasons, the Court should deny the Petition for failure to exhaust administrative remedies.

The exhaustion requirement for habeas claims under Section 2241 is prudential, rather than jurisdictional. *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (citing *Arango Marquez v. I.N.S.*, 346 F.3d 892, 897 (9th Cir. 2003)). A prudential exhaustion requirement may be waived if any of the *Laing* factors apply: "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the

burden of demonstrating that at least one of these *Laing* factors applies." *Aden v. Nielsen*, No. C18-1441RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019).

Petitioner argues that administrative exhaustion should be excused because any further appeal to the BIA would be futile due to its ruling in *Matter of Yajure Hurtado*, 29 I&N 216 (BIA 2025). Pet. ¶ 5.

The BIA's precedential decisions "serve as precedents in all proceedings involving the same issue or issues." 8 CFR §§ 1003.1(g)(1), (d)(i). The Court finds that, based on the opinion receiving a citation designation and the introductory paragraph's language, the BIA's decision in the *Matter of Yajure Hurtado* was precedential. *See* 29 I&N at 216 ("This case presents an issue that the Board has not previously addressed in a precedential decision"). Therefore, it seems to be apparent that an appeal to the BIA is highly likely, if not certain, to result in a holding that anyone who is deemed "[a]n alien present in the United States without being admitted or paroled," will be subjected to mandatory detention without bond under Section 1225(b)(2). Thus, the Court agrees with Petitioner, a BIA appeal of his contested classification—which requires mandatory detention—is indeed futile.

As discussed above, exhaustion may be waived upon a showing that at least one of the *Laing* factors applies. Due to the Court's finding of futility, it need not address the other factors. *Aden*, 2019 WL 5802013, at *2. Thus, the Court finds the prudential exhaustion requirement is waived.

Accordingly, the Court has jurisdiction to hear this petition.

**B. Application of Section 1225 vs. Section 1226**

Petitioner contends that Respondents' subjection of him to Section 1225(b)(2), requiring mandatory detention, violates the INA and the Due Process Clause of the Fifth Amendment. Pet. ¶¶ 41-42, 44, 47. Respondents argue that the Court should reject Petitioner's argument that his detention is governed by Section 1226 instead of Section 1225. Res. at 7. For the reasons stated below, the Court agrees with Petitioner.

//

The Court's analysis begins with an overview of each statute.

**1. Section 1225**

Section 1225 governs DHS' determination of admissibility for a noncitizen seeking entry into the country, which "generally begins at the Nation's borders and ports of entry." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). This process "generally begins at the Nation's borders and ports of entry." *Id.* This section provides for the inspection, and expedited removal, of certain arriving noncitizens—specifically, "applicants for admission." 8 U.S.C. §§ 1225(a)(1), (3) An "applicant[] for admission" is expressly defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1). During inspection, an immigration officer may determine a noncitizen to be inadmissible and order their removal, without a further hearing or review. *Id* § 1225(b)(1)(A)(i). An "applicant[] for admission" is subject to expedited removal if they: (1) are inadmissible for lack of a valid entry document; (2) have not been physically present in the United States continuously for two years before the determination of inadmissibility; and (3) are among those designated for expedited removal. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020) (citing 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(I)-(II)). Section 1225 also authorizes the mandatory detention of certain noncitizens. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); *Id.* § 1225(b)(2)(A). Relevant to the Court's inquiry is Section 1225(b)(2)(A), which requires the mandatory detention of "applicants for admission." *Id.*; *see id.* § 1225(a)(1).

**2. Section 1226**

Section 1226(a) generally governs the process under which noncitizens, located within the United States, are arrested and detained pending their removal. *Jennings*, 583 U.S. at 288. ("Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'") (quoting 8 U.S.C. § 1226(a)). This Section also sets forth a detention framework that permits the Attorney General to: (1) "continue to detain the arrested alien;" (2) "release the alien on bond of at least $1,500;" or (3) "release

the alien on conditional parole." 8 U.S.C. §§ 1226(a)(1)-(2). The initial detention determination is made by the arresting immigration officer, but noncitizens may lodge an appeal in a bond hearing before an immigration judge. 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Under Section 1226(b), the Attorney General may revoke bond or parole, and may rearrest and detain the alien "under the original warrant." 8 U.S.C. § 1226(b).

In passing the Laken Riley Act, Congress amended Section 1226(c). Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025). This amendment "carved out a statutory category of [criminal] aliens who may not be released under § 1226(a)." *Jennings*, 583 U.S. at 289. Thus, requiring the Attorney General to detain a noncitizen who "falls into one of several enumerated categories involving criminal offenses and terrorist activities" "which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." *Id.*; 8 U.S.C. §§ 1226(c)(1)(E)(i)-(ii).

The Supreme Court best summarized the statutory landscape regarding whether a noncitizen's detention is mandatory or discretionary in *Jennings* when it said: "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under § 1226(a)[.]" 583 U.S. at 289.

### 3. Section 1226 Applies to Martinez Lopez

Recently, numerous courts across the nation have considered the applicability of Section 1225(b)(1) versus Section 1226(a) for noncitizens who have continuously remained in the United States for longer than two years—or even decades—but had not previously sought admission. *See, e.g.*, *Hasan v. Crawford*, No. 1:25-CV-1408, 2025 WL 2682255, at *9  (E.D. Va. Sept. 19, 2025) ("For all these reasons,...Hasan's detention is governed by § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures."); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1261 (W.D. Wash. 2025) ("Rodriguez has shown that the text of Section 1226, canons of interpretation, legislative

history, and longstanding agency practice indicate that he is governed under Section 1226(a)'s 'default' rule for discretionary detention. The Court is persuaded that Rodriguez is likely to succeed on the merits that he is unlawfully detained under Section 1225(b)(2)'s mandatory detention provision."); *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *7 (E.D. Mich. Sept. 19, 2025) ("The BIA's decision to pivot from three decades of consistent statutory interpretation and call for Pizarro Reyes' detention under § 1225(b)(2)(A) is at odds with every District Court that has been confronted with the same question of statutory interpretation. At least a dozen federal courts concur generally with this Court's interpretation of the statutory language as applied in this context."); *Barrera v. Tindall*, No. 3:25-CV-541, 2025 WL 2690565, at *5 (W.D. Ky. Sept. 19, 2025) ("Courts across the country have been faced with similar questions of law and fact presented by the United States. And *every court* who has examined this novel interpretation of Section 1225 by the United States has rejected their theory and adopted Petitioner's. This includes courts within the Sixth Circuit, and across the country."); *Vazquez v. Feeley*, No. 2:25-CV-01542, 2025 WL 2676082, at *16 (D. Nev. Sept. 17, 2025) ("In sum, the Court finds that the text and canons of statutory interpretation, including the legislative history, regulations, and long history of consistent agency practice, as well as the doctrine of constitutional avoidance, demonstrate that Petitioner is likely to succeed in establishing he and similarly situated noncitizens are subject to detention under § 1226(a) and its implementing regulations, not § 1225(b)(2)(A).").

Through its exploration of the recent caselaw, the Court identified only three decisions where courts cited the *Yajure Hurtado* decision and denied a noncitizen's request for habeas relief. *See, e.g.*, *Chavez v. Noem*, No. 3:25-CV-02325, 2025 WL 2730228, at *5 (S.D. Cal. Sept. 24, 2025) (denying petitioners' application for TRO); *Vargas Lopez v. Trump*, No. 8:25CV526, 2025 WL 2780351, at *10 (D. Neb. Sept. 30, 2025) (denying Petitioner's petition for writ of habeas corpus); *Laguna Espinoza v. Dir. of Detroit Field Off., U.S. Immigr. & Customs Enf't*, No. 4:25-CV-02107, 2025 WL 2878173, at *4 (N.D. Ohio Oct. 9, 2025) (denying writ of habeas corpus without prejudice). In support of their

position, Respondents cite to *Chavez v. Noem*, which recently concluded that "aliens present in the United States who have not been admitted" are, "[b]y the plain language of § 1225(a)(1), ... 'applicants for admission' and thus subject to the mandatory detention provisions of 'applicants for admission' under § 1225(b)(2)." Res. at 7; 2025 WL 2730228, at *4 (cleaned up).

After carefully reviewing these decisions, and for the reasons set forth below, the Court agrees with the vast majority of its sister courts in finding that Section 1226(a)—rather than Section 1225(b)(2)(A)—applies here. As the Court's rationale is squarely aligned with its sister courts' interpretation of the statutory text, analysis of legislative history, and longstanding agency practices, there is no need to reinvent the wheel through the contribution of a repetitive discussion on this issue. Instead, in the interest of judicial economy, the Court follows *Vazquez* and incorporates its reasoning by reference. 2025 WL 2676082, at *11-16.

Turning to the merits of the Petition, the Court's concludes that Section 1226, and not Section 1225, applies to Petitioner. This conclusion is based on two of the Court's findings.

First, the temporal scope of Section 1225's language governing mandatory detention, is narrow in scope. *Vazquez*, 2025 WL 2676082, at *13; *see* 8 U.S.C. §1225(b)(2)(A). Therefore, it cannot be read to apply in perpetuity to noncitizens that have continually resided in the United States for more than two years.

Martinez Lopez was intercepted by ICE on September 8, 2025. Pet. ¶ 32. Martinez Lopez alleges that he has continuously remained in the United States since he first entered in 2002. *Id.* ¶ 29. In support of this contention, he has provided documentation demonstrating that his daughter, a U.S.-citizen, was born in 2023 in Massachusetts. *Id.* ¶ 31; ECF No. 1-3 at 2. Petitioner also claims to have various other longstanding ties to his community. *Id.* ¶ 30.

//
//

In its "Form I-213, Record of Deportable/ Inadmissible Alien", the Government reports that when it intercepted Petitioner, he stated that he illegally entered the country in 2025. *See* ECF No. 7-1 at 4. However, in its Notice to Appear, the Government alleges that Petitioner "entered the United States at or near unknown place, on or about unknown date." *Id*. at 7.

The Court notes this discrepancy and places more weight on the Notice to Appear as it was generated more recently and the reliance that the Immigration Court will place on it for its accuracy during those proceedings. Further, Respondents have not alleged that Petitioner has not physically been in the United States for less than two years in their Response or at the hearing. Therefore, the Court finds that Petitioner has sufficiency shown that he has continually resided in the country for more than two years. Thus, Section 1225 does not apply to Petitioner.

Other provisions of Section 1225 also suggest that Congress' focus was on ports of entry or recent arrivals, not longtime noncitizen residents intercepted far from any border. *Vazquez*, 2025 WL 2676082 at *13; *see K Mart Corp. v. Cartier, Inc.,* 488 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statue, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.") (citations omitted). "For example, Section 1225's title refers to the 'inspection' of 'inadmissible arriving' noncitizens, while its subsections set forth procedures for 'examining immigration officer[s]', to engage in '[i]nspection[s]' of individuals 'arriving in the United States.'") (quoting *See* 8 U.S.C.§§ 1225(b)(2)(A), (b)(4), (a)(3), (b)(1), (b)(1), (d)) (cleaned up). Thus, Section 1225(b)(2)(A) authorizes the mandatory detention of noncitizens entering, attempting to enter, or who have recently entered the county.

Here, ICE arrested Martinez Lopez at "1500 Broadway, Broadway Massachusetts." ECF No. 7-1 at 4. This address, let alone the stated city, does not exist. The Court surmises that the accurate location of Petitioner's arrest was in Boston, Massachusetts, considering

//

1 that ICE ERO Boston officers arrested Petitioner. *Id*. Respondents have not argued that Petitioner was arrested in close proximity to a border crossing.

Under these specific facts—Petitioner was not actively entering, attempting to enter or had recently entered, the country when apprehended by ICE. Respondents have not presented any facts to suggest that Petitioner traveled through any ports of entry prior to his arrest, let alone anything recent. Here, Petitioner was not apprehended in close proximity to our nation's borders and had already been in the country for over twenty years. Accordingly, Section 1225 does not apply to Petitioner.

Related to this arrest, in the Traverse, Petitioner highlighted an issue that brings the Court great concern. Petitioner states that according to ICE's Form I-213, its agents stopped his vehicle, while conducting a field operation that targeted a different individual. Trav. at 1-2, 6-7. He argues that ICE agents, without a judicial or administrative warrant and making the requisite statutory findings, questioned and detained him solely on the basis of perceived ethnicity. *Id*. at 2, 6-7; *see* 8 U.S.C. § 1357(a)(2). The Court finds this allegation extremely troubling. At the hearing, the Court advised Petitioner that if he intended to also seek relief under this newly stated ground, additional briefing from the Government to address this matter would be required. In response, and in the interest of reaching an expeditious resolution, Petitioner declined to pursue this new claim and stated that he was solely seeking relief under the two claims set forth in the Petition.

Second, ICE intercepted Martinez Lopez when he was "already present in the United States" and although he is "inadmissible for entering without inspection," none of the exceptions set forth in 8 U.S.C. § 1226(c)(1)(E)(ii)'s exception are applicable. *See id*. §§ 1226(c)(1)(E)(i)-(ii), 1182(a)(6)(A). Thus, Section 1226 must apply to Martinez Lopez.

For the reasons above, the Court concurs with its sister courts and concludes that Section 1226(a), rather than Section 1225(b)(2)(A), applies to Martinez Lopez.

//
//
//

At the hearing, when the Court advised its tentative was to grant the Petition, Petitioner urged the Court to adopt the IJ's September 29, 2025, bond determination and grant his release, pursuant to a $1,500.00 bond. *See* ECF No.1-2 at 2.

The Government objected to, and the Court agrees that, this approach is inappropriate for two reasons. First, the IJ denied Petitioner's custody redetermination request, finding that the *Matter of Yajure Hurtado* applies in this case. Therefore, the IJ did not have jurisdiction under Section 1226(a) to even determine whether Petitioner was suitable for bond. Second, with respect to proffered bond determination, the IJ found that Petitioner "does not present danger and would set bond at $1,500 in this case." *See id*. This finding does not speak to, and Respondents were afforded the opportunity to arguments addressing, Petitioner's flight risk. Thus, the Court finds that the IJ's bond determination is defective.

Accordingly, Petitioner is entitled to, and the Court will order Respondents to provide him, a new bond determination hearing under 8 U.S.C. § 1226(a).

### C. Procedural Due Process

The Court declines to decide the merits of Petitioner's due process claim given that the Court will grant the relief he seeks based on its interpretation of the applicability of Section 1226. If Respondents do not provide Petitioner with a bond redetermination hearing, pursuant to 8 U.S.C. § 1226(a), or release him within the time allotted, Petitioner may renew his Fifth Amendment Due Process claim.

### IV. CONCLUSION

Based on the foregoing:

(1) The Court **GRANTS** Martinez Lopez's Petition for Writ of Habeas Corpus Pursuant to 8 U.S.C. § 2241 as to Count One. Count Two of the Petition is **DENIED AS MOOT WITHOUT PREJUDICE**;

(2) The Court **ORDERS** Respondents to provide Petitioner with a bond redetermination hearing under 8 U.S.C. § 1226(a) within ten days of this

Order, or otherwise release him from custody, under the same conditions that existed before his detention;

(3) The IJ and Respondents are **ENJOINED** from denying Petitioner bond on the basis that he is detained under 8 U.S.C. § 1225(b)(2);

(4) Respondents are **ORDERED** to **FILE** a Notice of Compliance within ten days of providing Petitioner with a bond redetermination hearing;

(5) The Clerk of Court **SHALL** enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated: October 30, 2025

_____
Honorable James E. Simmons Jr.
United States District Judge